UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CIXXFIVE CONCEPTS, LLC,

Plaintiff,

v.

GETTY IMAGES, INC., et al.,

Defendants.

Case No. C19-386-RSL

ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION

This matter comes before the Court on (1) defendant Getty Images (US), Inc.'s "Renewed Motion to Compel Arbitration, Dismiss Class Claims and Stay Proceedings" (Dkt. #43), and (2) defendants Getty Images, Inc.'s and License Compliance Services, Inc.'s "Renewed Motion to Compel Arbitration, Dismiss Class Claims and Stay Proceedings" (Dkt. #44). Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court finds as follows:

**I. BACKGROUND**

Plaintiff CixxFive Concepts, LLC, a Texas-based digital media marketing company, brings this putative class action against defendants Getty Images, Inc., Getty Images (US), Inc. ("Getty Images US"), and License Compliance Services Inc. ("LCS"). See Dkt. #37 (First Am. Compl.) (hereinafter "FAC"). Getty Images is a Seattle-based global licensor of photographs and other digital content. See FAC ¶¶ 19-20; Dkt. #43 at 9. Defendant Getty Images, Inc. is the

[1] The Court finds this matter suitable for disposition without oral argument.

parent company of defendant Getty Images US. FAC ¶¶ 11-12; Dkt. #43 at 7. Getty Images, Inc. also owns defendant License Compliance Services ("LCS"). FAC ¶ 14. Plaintiff alleges that LCS conducts enforcement activities for Getty Images. FAC ¶¶ 46, 49. According to defendants, LCS ceased business operations in 2017. See Dkt. #45 (Wilsdon Decl., Ex. A (Cameron Decl.) at ¶ 2).

Getty Images US utilizes rights-managed licensing, selling licenses for one-time use of a photograph ("editorial rights licensing") or as part of an annual subscription licensing agreement ("subscription licensing"). See FAC at ¶¶ 22-28, 35, 57; Dkt. #43 at 10. In June 2017, plaintiff entered into a Premium Access Agreement with Getty Images US, and accordingly became a subscription licensing customer. Id. at ¶¶ 56, 65. The Premium Access subscription allowed plaintiff to download a certain number of photographs for a flat monthly fee. Dkt. #47 (Wojtczak Decl. at ¶ 7). On May 25, 2018, plaintiff purchased a license for one-time use of a photograph, which it alleges was in the public domain. FAC at ¶¶ 66-68. Because the photo (hereinafter "the Highsmith License") was not available to plaintiff within its Premium Access subscription, plaintiff had to pay a fee to separately purchase the license. Wojtczak Decl. at ¶ 8.

Plaintiff brought this action against defendants on behalf of itself and all others similarly situated, alleging that defendants unlawfully license images that are in the public domain. See generally FAC at ¶¶ 1-10. Plaintiff alleges (1) violations of the Racketeering Influenced and Corrupt Organizations Practices ("RICO") Act, see 18 U.S.C. § 1962, (2) unjust enrichment, (3) breach of contract, and (4) violations of the Washington Consumer Protection Act ("WCPA"), see RCW §§ 19.86.010, *et seq.*, and seeks declaratory judgment and injunctive relief under 28 U.S.C. §§ 2201, 2202. See FAC at 17-26 (Counts I-VI). Defendants move to compel arbitration of plaintiff's claims on an individual basis. Dkts. #43, #44.

## II. AGREEMENT TO ARBITRATE

Pursuant to the Federal Arbitration Act ("FAA"), a written agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]rbitration is a matter of contract" and "arbitrators derive their authority to resolve disputes only because the parties have

agreed in advance to submit such grievances to arbitration." AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648-49 (1986) (citations omitted). Before a matter will be forced to arbitration, the Court must determine (a) whether a valid agreement to arbitrate exists, and (b) whether the particular dispute falls within the scope of the agreement. United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960). The FAA embodies a federal policy favoring arbitration, and it is well established "that where the contract contains an arbitration clause, there is a presumption of arbitrability[.]" AT&T Techs., 475 U.S. at 650. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

**a. Content License Agreement**

Defendants assert that the May 25, 2018 transaction was subject to the March 2017 Getty Images Content License Agreement (hereinafter "Content License Agreement").[2] See Dkt. #46 (Charley Decl. at ¶¶ 11-12, Ex. A); Wojtczak Decl. at ¶¶ 18-21. Section 10.d of the Content License Agreement provides:

> Governing Law/Arbitration. This agreement will be governed by the laws of the State of New York, U.S.A., without reference to its laws relating to conflicts of law. Any disputes arising from or related to this agreement shall be finally settled by binding, confidential arbitration by a single arbitrator selected using the rules and procedures for arbitrator selection under the JAMS' Expedited Procedures in its Comprehensive Arbitration Rules and Procedures ("JAMS") if you are in North America, or of the International Centre for Dispute Resolution ("ICDR") or JAMS if you are outside of North America (the applicable rules to be at your discretion), in effect on the date of the commencement of arbitration to be held in one of the following jurisdictions (whichever is closest to you): New York, New York; London, England; Paris, France; Munich, Germany; Madrid, Spain; Milan, Italy; Sydney, Australia; Tokyo, Japan; or Singapore. The arbitration proceedings shall be conducted in English and all documentation shall be presented and filed in English. The decision of the arbitrator shall be final and binding on the parties, and judgment may be entered on the

[2] Defendants also refer to this agreement as the "2017 EULA."

> arbitration award and enforced by any court of competent jurisdiction. The United Nations Convention on Contracts for the International Sale of Goods does not govern this agreement. The prevailing party shall be entitled to recover its reasonable legal costs relating to that aspect of its claim or defense on which it prevails, and any opposing costs awards shall be offset. Notwithstanding the foregoing, Getty Images shall have the right to commence and prosecute any legal or equitable action or proceeding before any court of competent jurisdiction to obtain injunctive or other relief against you in the event that, in the opinion of Getty Images, such action is necessary or desirable to protect its intellectual property rights. The parties agree that, notwithstanding any otherwise applicable statute(s) of limitation, any arbitration proceeding shall be commenced within two years of the acts, events or occurrences giving rise to the claim.

Charley Decl., Ex. A at § 10.d.

Plaintiff acknowledges the existence of the arbitration provision in the Content License Agreement, but asserts that it cannot be used to compel arbitration because the Content License Agreement as a whole is unsupported by consideration and is therefore invalid. See Dkt. #50 at 7-11. Plaintiff's challenge to the validity of the Content License Agreement as a whole is improperly before the Court and must be made to the arbitrator. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71 (2010). While the Court must consider a challenge to the validity of the arbitration agreement *itself* prior to ordering arbitration, agreements to arbitrate are severable. See Rent-A-Center, 561 U.S. at 71 ("[W]e nonetheless require the basis of the challenge to be directed specifically to the agreement to arbitrate before the court will intervene."). "In other words, if the plaintiff does not specifically and directly challenge the 'precise agreement to arbitrate at issue,' a court must treat the arbitration agreement as valid under [9 U.S.C. § 2] and enforce it, thereby letting the arbitrator decide questions as to the validity of other provisions in the first instance." Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1032 (9th Cir. 2016) (citation omitted); see also Diversified Roofing Corp. v. Pulte Home Corp., Nos. CV12-1880 PHX DGC, CV12-2177 PHX DGC, 2012 WL 6628962, at *4-5 (D. Ariz. Dec. 19, 2012) ("Because [plaintiff's] lack of consideration claim goes to the validity of the Agreement and not to the validity of the arbitration provision, the Court cannot consider it.").

In addition, plaintiff raises a lack of assent challenge to the Content License Agreement. See Dkt. #50 at 12-14. The Court construes this as a challenge to the validity of the arbitration agreement itself, which it must resolve before ordering compliance with that agreement under § 4 of the FAA. Rent-A-Center, 561 U.S. at 71. Pursuant to the arbitration provision in the Content License Agreement, the parties must manifest mutual assent to form a contract under New York law. See Charley Decl., Ex. A at § 10.d.

Defendants have submitted evidence that plaintiff would have had to agree to the terms of the Content License Agreement to complete the May 25, 2018 purchase of the Highsmith License. See Wojtczak Decl. at ¶ 10; Dkt. #54 (Harrison Decl., Exs. A-D).[3] Because plaintiff had reasonable notice that the transaction was subject to the terms of the Content License Agreement, the Court finds that plaintiff assented to the arbitration agreement when it continued with the May 25, 2018 transaction. See, e.g., O'Callaghan v. Uber Corp. of Cal., No. 17 Civ. 2094 (ER), 2018 WL 3302179, at *6-7 (S.D.N.Y. July 5, 2018). Accordingly, the Court rejects plaintiff's lack of assent challenge,[4] and concludes that the Section 10.d of the Content License Agreement constitutes a valid agreement to arbitrate.

The Court must next consider whether plaintiff's claims fall within the scope of the agreement. See United Steelworkers, 363 U.S. at 582-83. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. See Chiron Corp., 207 F.3d at 1131.

---

[3] Plaintiff moves to strike the Declaration of Brendan Harrison (Dkt. #54), which provides additional detail regarding the transaction process and contains several cropped images from Getty Images US' "checkout" process. See Dkt. #56. The Court declines to strike the declaration and exhibits. The information, including the screenshots from Getty's website, are relevant as offered to prove plaintiff had sufficient notice of the Content License Agreement. "Although the court may not consider evidence outside the pleadings unless incorporated by reference or judicially noticed in the context of a motion to dismiss under Federal Rule of Civil Procedure 12, the court must consider evidence of the existence of an arbitration agreement in the context of a motion to compel arbitration." Harbers v. Eddie Bauer, LLC, No. C19-1012JLR, 2019 WL 6130822, at *5 (W.D. Wash. Nov. 19, 2019) (citing Chiron Corp., 207 F.3d at 1130). The Court accepts Mr. Harrison's declaration as adequate authentication of the exhibits from Getty Images US' "checkout process" and will consider the declaration and attached exhibits at this stage. Id.

[4] Because the Court finds sufficient evidence that plaintiff assented to the Content License Agreement, plaintiff's request for jurisdictional discovery on the issue is denied. See Dkt. #50 at 14.

The arbitration agreement in the Content License Agreement is broad and far reaching. It indicates that: "Any disputes arising from or related to this agreement shall be finally settled by binding, confidential arbitration[.]" Charley Decl., Ex. A at § 10.d. The Ninth Circuit construes arbitration clauses that include phrases like "relat[ed] to" broadly. See, e.g., Mediterranean Enters., Inc. v. Ssanyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983) (indicating that "relating to" language in an arbitration provision extends beyond disputes relating to interpretation and performance of the contract itself).

Count III of plaintiff's FAC alleges breach of contract and clearly falls within the scope of the arbitration provision in the Content License Agreement. The Court further finds that Count I, alleging RICO Act violations, falls within the scope of the arbitration agreement. Cf. Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 759 (9th Cir. 1988) (finding RICO claims "arbitrable as controversies 'arising out of or relating to' [plaintiff's] accounts with defendant"). Counts II and IV allege state law claims for unjust enrichment and violations of the Washington Consumer Protection Act ("WCPA"), which the Court finds relate to the agreement and fall under the broad language of the arbitration clause. See, e.g., James Hardie Bldg. Prods. Inc. v. Good Inc., No. C13-05247-RBL, 2013 WL 3814667, at *3-4 (W.D. Wash. July 22, 2013) (finding state law and WCPA claims to be "related to" service agreements and compelling arbitration of those claims under similarly broad arbitration clause). Finally, Counts V and VI, seeking declaratory judgment and injunctive relief under 28 U.S.C. § 2201, 2202 related to Getty Images' photo licenses fall within the scope of the arbitration agreement. See, e.g., Alaska Protein Recovery, LLC v. Puretek Corp., No. C13-1429, 2014 WL 2011235, at *4-5 (W.D. Wash. May 16, 2014) (finding declaratory judgment claims arbitrable where requests "ar[o]se out of or relate[d] to" agreement). The Court finds each of plaintiff's six claims is arbitrable under the broad arbitration clause set forth in Section 10.d of the Content License Agreement.

**b. Premium Access Agreement**

Although plaintiff does not dispute that its claims arise out of its May 25, 2018 purchase of the Highsmith License, after attempting to disclaim the Content License Agreement

governing that transaction, it alleges that the earlier Premium Access Agreement[5] between the parties governs the arbitrability of its claims, and asserts that it may "opt-out" of arbitration under that contract. While plaintiff makes general assertions about the impacts of Getty Images US' subscription model, its concrete allegations regarding the sale of images allegedly in the public domain arise from the May 25, 2018 Highsmith License transaction. See FAC at ¶¶ 66-71; see also, e.g, id. at ¶ 9 ("All licensees who have paid Getty and/or Getty US a licensing fee for a public domain image should recover all damages available at law and equity."). Plaintiff does not dispute this, but instead attempts to bring its claims within the Premium Access Agreement by alleging that it, rather than the Content License Agreement, governs the May 25, 2018 transaction. See Dkt. #50 at 14-17.

In support of this argument, plaintiff relies on the "Entirety Clause" in Section 12.10 of the Premium Access Agreement. Id. That clause provides,

> Entire Agreement. This Agreement is intended for business customers of Getty Images and contains all the terms of the license agreement. No terms or conditions may be added or deleted unless made in writing and either accepted in writing by an authorized representative of both parties or issued electronically by Getty Images and accepted in writing by an authorized representative of Licensee. In the event of any inconsistency between the terms contained herein and the terms contained on any purchase order or other communication sent by Licensee, the terms of this Agreement shall govern.

See Dkt. #50-3 (Atkins Decl., Ex. 1B at § 12.10).

The Court is not persuaded by plaintiff's contention that the Entirety Clause renders the terms of the subsequent Content License Agreement invalid. See Dkt. #50 at 14-17. As defendants point out, the plain language of the Entirety Clause prohibits licensees from unilaterally imposing conflicting contract terms. Dkt. #52 at 10. Here, plaintiff is the licensee, and its misleading assertion that it unilaterally "sent" the Content License Agreement to Getty Images US when it initiated the separate Highsmith License transaction contravenes the facts of the case. Plaintiff provides no convincing authority for the interpretation that it advances, and

[5] Defendants also refer to this earlier agreement as the "2016 EULA."

the Court is aware of none. The Court has concluded that plaintiff assented to the terms of the Content License Agreement during the May 25, 2018 transaction, and the Court agrees with defendants that the Content License Agreement contains a separate, valid arbitration agreement between the parties. Dkt. #52 at 10. Moreover, the Court has found that arbitration agreement enforceable and has concluded that plaintiff's claims fall within its scope.[6] Finally, even if plaintiff had convincingly identified some ambiguity as to the arbitrability of its claims, controlling federal law instructs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Chiron Corp., 207 F.3d at 1131. The Court will compel arbitration of plaintiff's claims under the enforceable arbitration agreement in the Content License Agreement.

## III. PLAINTIFF'S CLAIMS AGAINST GETTY IMAGES, INC. AND LCS

Defendants Getty Images, Inc. and LCS move separately in support of Getty Images US' Motion to Compel Arbitration. See Dkt. #44. Although Getty Images, Inc. and LCS are not parties to the Content License Agreement, they seek to enforce the arbitration agreement contained therein. "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128 (9th Cir. 2013) (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009)). "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotation marks and citation omitted). New York law applies pursuant to the arbitration clause in the Content License Agreement. See Charley Decl., Ex. A at § 10.d; Dkts.

[6] As a last-ditch effort, plaintiff asserts that the Premium Access Agreement governs the parties' entire business relationship and accordingly trumps the language in the Content License Agreement. Dkt. #50 at 16-17. Plaintiff's bare assertions about the parties "business relationship" are futile given that plaintiff's claims stem from its separate purchase of the Highsmith License, a transaction that was governed by the Content License Agreement. Plaintiff has not met its burden to explain why the Court should conclude otherwise, and the Court is unwilling to do so. See Green Tree Fin. Corp.-Ala. V. Randolph, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

#44 at 8, #50 at 5-6, 8; see also, e.g., Lagrone v. Adv. Call Ctr. Techs., LLC, No. C13-2136JLR, 2014 WL 4966738, at *4 (W.D. Wash. Oct. 2, 2014).

Plaintiff concedes that, as the parent company of Getty Images US, Getty Images, Inc. can utilize an enforceable arbitration agreement between Getty Images US and plaintiff to compel arbitration of plaintiff's claims. See Dkt. #51 at 2 n.3; see also Vitzethum v. Dominick & Dominick, Nos. 94 Civ. 4938(AGS), 95 Civ. 429(AGS), 1996 WL 19062, at *7 (S.D.N.Y. Jan. 18, 1996) ("[W]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." (citation omitted)). Because the Court has found an enforceable agreement to arbitrate between plaintiff and Getty Images US, Getty Images, Inc. can enforce the agreement to compel arbitration of plaintiff's claims.

On the other hand, plaintiff argues that LCS cannot enforce the arbitration agreement on grounds that (1) it is not a "disclosed" agent of Getty Images US, and (2) its liability does not arise out of the same alleged misconduct giving rise to Getty Images US' liability. See Dkt. #51 at 5-8. The Court declines to consider these arguments because it finds plaintiff lacks standing to bring its claims against LCS. See Bernhardt v. Cty. of Los Angeles, 279 F.3d 862, 868 (2002) ("[F]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." (citations omitted) (alteration in original)).

To establish Article III standing, plaintiff must demonstrate that (1) it suffered an injury in fact, (2) there is a causal connection between the injury and the defendants' conduct, and (3) the injury will likely be redressed by a favorable decision from the Court. See Lujan v. Defs. Of Wildlife, 504 U.S. 555, 560-61 (1992). A named plaintiff representing a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) (citation omitted). An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (citations and

internal quotation marks omitted). Plaintiff's allegations state that "LCS is believed to have conducted these enforcement activities on behalf of Getty [Images, Inc.] and/or Getty [Images] US, and on behalf of third party owners of image libraries." FAC at ¶ 49. Plaintiff's conclusory allegations indicate that LCS took these actions against other entities, but not against plaintiff. See, e.g., id. at ¶ 50 ("LCS has sent letters to businesses accusing them of infringing copyrights in public domain images."). In its sole concrete allegation against LCS, plaintiff asserts that LCS took unlawful enforcement action by sending a letter to photographer Carol Highsmith, a non-party to this case. Id. at ¶ 51, Ex. A; see also Simon, 426 U.S. at 40 n.20. Plaintiff fails to show that it has suffered any injury in fact or asserted any injury that is fairly traceable to the actions of LCS. Lujan, 504 U.S. at 560-61. Accordingly, plaintiff lacks standing to bring its claims against LCS. Those claims are dismissed for lack of jurisdiction. Id.

## IV. AVAILABILITY OF CLASS ARBITRATION

Having concluded that plaintiff's claims against defendants Getty Images US and Getty Images, Inc. are subject to arbitration, the Court must determine whether class arbitration is available, or whether plaintiff must proceed to arbitration with its individual claims. Absent clear and unmistakable language in the arbitration agreement to the contrary, the availability of class arbitration is a gateway issue of arbitrability for the Court to decide. See, e.g., Eshagh v. Terminix Int'l Co., 588 Fed. App'x 703, 704 (9th Cir. 2014).[7] And while the parties may delegate the gateway issue of availability of class arbitration to the arbitrator, here there is no "clear and unmistakable evidence" in the arbitration agreement evincing such intent. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (alterations omitted) (quoting AT&T Techs., 475 U.S. at 649). Accordingly, the Court must resolve this gateway arbitrability issue prior to compelling arbitration of plaintiff's claims.

---

[7] While the Supreme Court has yet to address whether the availability of class arbitration is a gateway question of arbitrability for the Court to decide, see Lamps Plus v. Varela, 139 S. Ct. 1407, 1417 n.4 (2019), each circuit court that has addressed the issue, and district courts within the Ninth Circuit, have concluded that "class arbitrability is a gateway issue for courts, not arbitrators, to decide, absent clear and unmistakable language to the contrary." Cervantes v. Voortman Cookies Ltd., No. 3:19-cv-00700-H-BGS, 2019 WL 3413419, at *6-7 (S.D. Cal. July 29, 2019) (collecting cases) (quoting 20/20 Commc'ns, Inc. v. Crawford, 930 F.3d 715, 718 (5th Cir. 2019)) (additional citations omitted).

Defendants assert that the Content License Agreement between the parties "contemplates arbitration of plaintiff's individual claims and nothing more." See Dkt. #43 at 23.  The Court agrees that this result is compelled under the Supreme Court's decision in Lamps Plus v. Varela, 139 S. Ct. at 1419 ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.  The doctrine of *contra proferentem* cannot substitute for the requisite affirmative 'contractual basis for concluding that the part[ies] *agreed* to [class arbitration]." (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010)) (emphasis and alterations in original)).

There is no evidence in the arbitration agreement indicating that the parties agreed to class arbitration.  See Charley Decl., Ex. A at § 10.d.  Moreover, plaintiff does not argue that such evidence exists.  Instead, it fails to respond to defendants' argument that it may not arbitrate on a classwide basis.  See LCR 7(b)(2) (indicating that the Court may consider an opponent's failure to respond as an admission that the motion has merit).  Pursuant to the arbitration agreement between the parties, the Court compels arbitration of plaintiff's claims against Getty Images US and Getty Images, Inc. on an individual basis and dismisses plaintiff's class claims.

## V.     DISMISSAL OF PROCEEDINGS

As a final matter, the Court "may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." Johnmohammadi v. Bloomingdale's, Inc., 755 F.3d 1072, 1074 (9th Cir. 2014).  The Court finds that arbitration is the proper forum for all of plaintiff's viable claims.  Moreover, plaintiff has not asked the Court to stay the proceedings.  Therefore, the Court dismisses plaintiff's remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(3) in favor of arbitration, and without prejudice.

## VI.    CONCLUSION

For all the foregoing reasons, defendants' Motions to Compel Arbitration, Dismiss Class Claims and Stay Proceedings (see Dkts. #43, #44) are GRANTED.

IT IS HEREBY ORDERED that plaintiff's claims against LCS are DISMISSED without prejudice for lack of jurisdiction.

IT IS FURTHER ORDERED that plaintiff's putative class claims against defendants are DISMISSED and plaintiff shall proceed to arbitrate its claims on an individual basis.

IT IS FURTHER ORDERED that this matter is DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(3).

DATED this 7th day of July, 2020.

Robert S. Lasnik
United States District Judge